# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN C. MONARCH, an individual; DIRECT OUTBOUND SERVICES LLC, a South Carolina limited liability company,<br><br>                    Plaintiffs,<br><br>v.<br><br>RICHARD A. GORMAN; GORMAN ECONOMICS, LLC, a Delaware limited liability company, dba AT COST FULFILLMENT, LLC; VANGUARD ECONOMICS, LLC, a Georgia limited liability company, dba AT COST FULFILLMENT, LLC, dba FULFILLMENT.COM; AT COST NUTRACEUTICALS, LLC, a Georgia limited liability company; BRAND.COM, INC., a Pennsylvania Corporation; JOHN DOE 1; JOHN DOE 2; and JOHN DOE 3,<br><br>                Defendants. | Civil Action No. _____ |

## VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL

For their claims for relief against Defendants, Plaintiffs JOHN C. MONARCH ("Monarch") and DIRECT OUTBOUND SERVICES LLC ("DOS") (collectively "Plaintiffs"), allege as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Monarch maintains a primary residence in Greenville County, South Carolina and is a citizen of the State of South Carolina within the meaning and intent of 28 U.S.C. § 1332.

2.      DOS is a limited liability company duly created, existing and operating under the laws and ordinances of the State of South Carolina with its principal place of business in Greenville County, South Carolina.  Monarch is one of three owner of DOS, and each owner maintains a primary residence in South Carolina and is a citizen of the State of South Carolina.  Accordingly, DOS is a citizen of the State of South Carolina within the meaning and intent of 28 U.S.C. § 1332.

3.      Defendant Richard A. Gorman ("GORMAN") maintains a primary residence located in Philadelphia, Pennsylvania, and is a citizen of Pennsylvania within the meaning and intent of 28 U.S.C. § 1332.

4.      Defendant Gorman Economics, LLC ("GEC") is a limited liability company duly organized and created under the laws and ordinances of the State of Delaware and maintains a principal place of business in West Chester, Pennsylvania. GORMAN is the sole owner of GEC.  Accordingly, GEC is a citizen of Pennsylvania within the meaning and intent of 28 U.S.C. § 1332.

5.      Defendant Vanguard Economics, LLC, doing business as At Cost Fulfillment, LLC and/or Fulfillment.com is currently a Georgia limited liability company with its principal place of business in West Chester, Pennsylvania.

6.     At Cost Fulfillment is also a registered trade name of GEC, which also does business as At Cost Fulfillment, LLC.  Vanguard Economics LLC, Fulfillment.com, At Cost Fulfillment LLC, and At Cost Fulfillment will hereinafter be collectively referred to as "ACF."

7. GEC is one of the co-owners of ACF.  The other co-owner is Creative Estates LLC, a Georgia limited liability company, with its principal place of business in Georgia, which is solely owned by Justin Holland Singletary ("Singletary"), who maintains a primary residence located in the State of Georgia, and is a citizen of Georgia. Accordingly, ACF is a citizen of Georgia and Pennsylvania within the meaning and intent of 28 U.S.C. § 1332.

8.     Defendant At Cost Nutraceuticals, LLC ("ACN") is a Georgia limited liability company with its principal place of business in Georgia.  Singletary, who maintains a primary residence located in the State of Georgia, and is a citizen of Georgia, is the sole owner of ACN. Accordingly, ACF is a citizen of Georgia within the meaning and intent of 28 U.S.C. § 1332.

9.     Defendant Brand.com, Inc. ("BRAND") is a business corporation duly organized and created under the laws and ordinances of Pennsylvania.  BRAND maintains its principal place of business in Philadelphia, Pennsylvania. Accordingly, BRAND is a citizen of Pennsylvania within the meaning and intent of 28 U.S.C. § 1332.

10.     The true names or capacities, whether individual, corporate, associate or otherwise, of some defendants are unknown to Plaintiffs; therefore, Plaintiffs may ask for

leave of this Court to amend this Complaint to add any necessary parties, together with appropriate charging allegations

11.     The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiffs and Defendants are residents of different states and the amount in controversy in this case exceeds the sum or value of $75,000.00, exclusive of interest and costs.

12.     With the exception of ACN, all Defendants are residents of Pennsylvania for purposes related to jurisdiction and are therefore subject to general personal jurisdiction of the courts located in Pennsylvania.  ACN is the alter ego of GORMAN, ACF, and/or GEC and is thus subject to personal jurisdiction.

13.     Defendants' actions, upon which the allegations in this Complaint are based, were performed in this judicial district.

14.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(a)(2) and 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this judicial district.

15.     Therefore, Plaintiffs are informed and believe, and on that basis allege, that jurisdiction and venue are proper in this Court.

## FACTS

16.     Upon information and belief, at all times relevant to the allegations set forth herein, Defendant GORMAN owned and/or had an ownership interest in GEC, ACF, ACN, and BRAND (the "Defendant Companies").

4

17.    Upon information and belief, at all times relevant to the allegations set forth herein, Defendant GORMAN had access to and used the resources of GEC, ACF, ACN, and BRAND ("company resources") to post false, damaging, misleading, and defamatory statements about Plaintiffs.

18.    Upon information and belief, Defendant GORMAN hired and/or directed BRAND, which is a reputation management company, to post false, damaging, misleading, and defamatory statements about Plaintiffs.

19.    The False Statements (hereinafter defined) posted on www.ripoffreport.com ("ROR") were posted by an agent of GORMAN, GEC, ACF, ACN, and BRAND.

20.    The same individual who posted the False Statements on ROR, as part of Defendants' smear campaign, also posted the False Statements on the various other websites mentioned below.

21.    DOS provides fulfillment services and call center solutions to businesses throughout the United States.

22.    ACN and ACF offer services similar to that of DOS and are competitors of DOS.

23.    Defendants have intimate knowledge of search engine optimization ("SEO") techniques that would increase the visibility of websites on the Internet.

24.    Upon information and belief, at all times relevant to the allegations set forth herein, in or around January of 2014, Defendants, using company resources and by and through their agent, posted false, damaging, misleading and defamatory statements about Plaintiffs on the Internet, at http://www.ripoffreport.com/r/john-monarch/greenville-

south-carolina-29601/john-monarch-direct-outbound-john-monarch-is-operating-a-nationwide-scam-he-stole-my-mo-1115657, stating that "John Monarch Direct Outbound John Monarch Is Operating A Nationwide Scam"; stating that John uses the "Classic old bait and switch," and that he "hides the terms and considtions of the sale"; and making a variety of other untrue and damaging statements and implications aimed at Plaintiffs (collectively the "False Statements"). The False Statements have been attached to **Exhibit A** hereto.

25.     DOS does not make outbound sales calls to consumers and does not scam consumers.

26.     Additionally, to the extent Monarch is affiliated with other companies that make sales to consumers, the consumers cannot order any products unless they affirmatively check a box on the webpage to "opt-in" affirming that they have read and agreed to all terms and conditions relating to the offer. The companies do not "steal money."

27.     Upon information and belief, in or around January of 2014, Defendants posted false, damaging, misleading and defamatory statements about Plaintiffs on the Internet, at http://johncmonarch.com/lawsuits-filed/, stating that "John Monarch is the ring leader behind Perform Outsider, a website used to blackmail, harass, and intimidate people in the IM industry"; and making a variety of other untrue and damaging statements and implications aimed at Plaintiffs (collectively the "False Statements"). The False Statements have been attached to **Exhibit B** hereto.

28.     Upon information and belief, in or around January of 2014, Defendants posted false, damaging, misleading and defamatory statements about Plaintiffs on the Internet, at http://johncmonarch.com/fitsnews/, stating that "John Monarch is the ring leader behind Perform Outsider, a website used to blackmail, harass, and intimidate people in the IM industry"; and making a variety of other untrue and damaging statements and implications aimed at Plaintiffs (collectively the "False Statements"). The False Statements have been attached to **Exhibit C** hereto.

29.     Upon information and belief, in or around January of 2014, Defendants posted false, damaging, misleading and defamatory statements about Plaintiffs on the Internet, at http://johncmonarch.com/ecig-scams/, stating that "John Monarch is the ring leader behind Perform Outsider, a website used to blackmail, harass, and intimidate people in the IM industry"; and making a variety of other untrue and damaging statements and implications aimed at Plaintiffs (collectively the "False Statements"). The False Statements have been attached to **Exhibit D** hereto.

30.     Upon information and belief, in or around January of 2014, Defendants posted false, damaging, misleading and defamatory statements about Plaintiffs on the Internet, at http://johncmonarch.com/fraud-john-monarch-covering-assets/, stating that Monarch engages in "Fraud – John Monarch Covering His Ass(ets)"; alleging that "Last week John Monarch's BerryThin free trial scam was exposed across the internet"; stating that "John Monarch is the ring leader behind Perform Outsider, a website used to blackmail, harass, and intimidate people in the IM industry"; and making a variety of other untrue

and damaging statements and implications aimed at Plaintiffs (collectively the "False Statements"). The False Statements have been attached to **Exhibit E** hereto.

31.    Upon information and belief, in or around January of 2014, Defendants posted false, damaging, misleading and defamatory statements about Plaintiffs on the Internet, at http://johncmonarch.com/making-rain-tips-tips-tips/, stating that "After lifting the iron curtain we found that the ringleader of this extortion, John Monarch, and his crony Karl Steinborn, have blackmailed, harassed, tormented, and committed internet crimes against a number of people in the industry"; stating that "John Monarch is the ring leader behind Perform Outsider, a website used to blackmail, harass, and intimidate people in the IM industry"; and making a variety of other untrue and damaging statements and implications aimed at Plaintiffs (collectively the "False Statements").    The False Statements have been attached to **Exhibit F** hereto.

32.    Upon information and belief, in or around January of 2014, Defendants posted false, damaging, misleading and defamatory statements about Plaintiffs on the Internet, at http://johncmonarch.com/beelzen00b/, stating that "John Monarch is the ring leader behind Perform Outsider, a website used to blackmail, harass, and intimidate people in the IM industry"; and making a variety of other untrue and damaging statements and implications aimed at Plaintiffs (collectively the "False Statements"). The False Statements have been attached to **Exhibit G** hereto.

33.    Upon information and belief, in or around January of 2014, Defendants posted false, damaging, misleading and defamatory statements about Plaintiffs on the Internet, at http://johncmonarch.com/karl-steinborn/, stating that "Recently John Monarch has

received quite a bit of negative press online, after all he was exposed as the ring leader behind PerformOutsider.com / Ilya Putin / Ilya Blt[;] [w]e helped to spread the word online"; stating that "John Monarch is the ring leader behind Perform Outsider, a website used to blackmail, harass, and intimidate people in the IM industry"; and making a variety of other untrue and damaging statements and implications aimed at Plaintiffs (collectively the "False Statements"). The False Statements have been attached to **Exhibit H** hereto.

34.    Upon information and belief, in or around January of 2014, Defendants posted false, damaging, misleading and defamatory statements about Plaintiffs on the Internet, at http://johncmonarch.com/im-listen/, stating that Monarch has "lots of stress spending the money he stole from hundreds of thousands of US consumers"; stating that "John Monarch is the ring leader behind Perform Outsider, a website used to blackmail, harass, and intimidate people in the IM industry"; and making a variety of other untrue and damaging statements and implications aimed at Plaintiffs (collectively the "False Statements"). The False Statements have been attached to **Exhibit I** hereto.

35.    Upon information and belief, in or around January of 2014, Defendants posted false, damaging, misleading and defamatory statements about Plaintiffs on the Internet, at http://johncmonarch.com/karl-steinborn-suspended/, stating that "John Monarch is the ring leader behind Perform Outsider, a website used to blackmail, harass, and intimidate people in the IM industry"; and making a variety of other untrue and damaging statements and implications aimed at Plaintiffs (collectively the "False Statements"). The False Statements have been attached to **Exhibit J** hereto.

36.     Upon information and belief, in or around January of 2014, Defendants posted false, damaging, misleading and defamatory statements about Plaintiffs on the Internet, at http://johncmonarch.com/sleeping-us/, stating that "John Monarch is the ring leader behind Perform Outsider, a website used to blackmail, harass, and intimidate people in the IM industry"; and making a variety of other untrue and damaging statements and implications aimed at Plaintiffs (collectively the "False Statements"). The False Statements have been attached to **Exhibit K** hereto.

37.     Upon information and belief, in or around January of 2014, Defendants posted false, damaging, misleading and defamatory statements about Plaintiffs on the Internet, at http://johncmonarch.com/f-rating-bbb/, stating that "John Monarch is the ring leader behind Perform Outsider, a website used to blackmail, harass, and intimidate people in the IM industry"; and making a variety of other untrue and damaging statements and implications aimed at Plaintiffs (collectively the "False Statements"). The False Statements have been attached to **Exhibit L** hereto.

38.     Upon information and belief, in or around January of 2014, Defendants posted false, damaging, misleading and defamatory statements about Plaintiffs on the Internet, at http://johncmonarch.com/victim-brandon-rosen/, stating that "Brandon Rosen is another blackmail victim of John Monarch[;]  [i]n this case Mr. Rosen paid the blackmail fee in bitcoin to have his name taken off of the PerformOutsider.com website and to stop the harassment"; and making a variety of other untrue and damaging statements and implications aimed at Plaintiffs (collectively the "False Statements"). The False Statements have been attached to **Exhibit M** hereto.

39.    Upon information and belief, in or around January of 2014, Defendants posted false, damaging, misleading and defamatory statements about Plaintiffs on the Internet, at http://johncmonarch.com/victim-brian-mclevis/, stating that "Brian McLevis is the President of ScrubKit and Envyus Media[;] [l]ooking to steal affiliates from his network, John Monarch set out on a mission to destroy him via his criminal tactics that he launches against people via Perform Outsider and the pseudonym Ilya"; and making a variety of other untrue and damaging statements and implications aimed at Plaintiffs (collectively the "False Statements"). The False Statements have been attached to **Exhibit N** hereto.

40.    Upon information and belief, in or around January of 2014, Defendants posted false, damaging, misleading and defamatory statements about Plaintiffs on the Internet, at http://johncmonarch.com/victim-jennifer-selleck/, stating that "Jennifer Selleck is another blackmail victim of John Monarch"; and making a variety of other untrue and damaging statements and implications aimed at Plaintiffs (collectively the "False Statements").  The False Statements have been attached to **Exhibit O** hereto.

41.    Upon information and belief, in or around January of 2014, Defendants posted false, damaging, misleading and defamatory statements about Plaintiffs on the Internet, at http://johncmonarch.com/victim-name-withheld/, implying that Monarch blackmailed another victim who claims to "have received half a dozen death threats" from Monarch; and making a variety of other untrue and damaging statements and implications aimed at Plaintiffs (collectively the "False Statements"). The False Statements have been attached to **Exhibit P** hereto.

42.   Upon information and belief, in or around January of 2014, Defendants posted false, damaging, misleading and defamatory statements about Plaintiffs on the Internet, at http://www.johncmonarch.com (the "JM Site"), stating that Monarch is a "scammer," "blackmailer," and "extortionist"; stating that DOS is a "business facade"; accusing Monarch of "blackmail, hacking, extortion, and other internet crimes"; stating that "John Monarch cannot compete on a national level with other companies in the performance marketing industry, therefore he resorts to blackmail and intimidation tactics to scare people into not working with his competitors"; stating that "John Monarch uses PerformOutsider.com to target competitors of companies that he owns"; stating that "[h]e competes against his clients at Direct Outbound with his free trial scams"; alleging that Monarch gets "others to commit crimes" for him; and making a variety of other untrue and damaging statements and implications aimed at Plaintiffs (collectively the "False Statements"). The False Statements have been attached to **Exhibit Q** hereto.

43.   Upon information and belief, in or around January of 2014, Defendants posted false, damaging, misleading and defamatory statements about Plaintiffs on the Internet, at http://www.scambook.com/report/view/300028/John-Monarch-Complaint-300028-for-$359.88, stating that "Monarch of stole a significant amount of money from me"; and making a variety of other untrue and damaging statements and implications aimed at Plaintiffs (collectively the "False Statements"). The False Statements have been attached to **Exhibit R** hereto.

44.   Upon information and belief, in or around January of 2014, Defendants posted false, damaging, misleading and defamatory statements about Plaintiffs on the Internet, at

http://www.pissedconsumer.com/reviews-by-company/direct-outbound/john-monarch-is-operating-a-blackmail-and-extortion-ring-via-the-psuedonym-ilya-putin-20140116471272.html, stating that "Direct Outbound - John Monarch is operating a blackmail and extortion ring via the psuedonym Ilya Putin"; stating that "the only way John Monarch can attempt to compete in the performance marketing space is by blackmailing and extorting people that do business with his competitors"; stating that "John Monarch is the ringleader behind PerformOutsider.com / Ilya Putin[;] [h]e created these anonymous profiles to harass and blackmail people in the internet marketing industry that compete against him OR don't like him"; and making a variety of other untrue and damaging statements and implications aimed at Plaintiffs (collectively the "False Statements").  The False Statements have been attached to **Exhibit S** hereto.

45.    Upon information and belief, in or around January of 2014, Defendants posted false, damaging, misleading and defamatory statements about Plaintiffs on the Internet, at http://ilyaputin.com/, stating that "John Monarch is not a reputable businessman, but rather a scam artist and an extortionist"; stating that "the business he claims to run is called Direct-Outbound.com, which is also closely tied with Connexus Inc.[;] [b]oth of these companies may come across as legitimate, but the reality is that they're fronts for his scam business[;] [t]he same business is called PerformOutsider.com, and Monarch runs it under an assumed identity, Ilya Putin, or in some cases Ilya BLT"; stating that "[s]ay that you happen to be one of his competitors in the field of health and beauty marketing. Sooner or later, he's going to come after you—and when he does, it's going to go down like this: Monarch is going to post a great deal of pure bullshit about you online,

13

including all kinds of awful, defamatory content and vicious lies. And he won't stop with you: He'll come after your spouse, possibly even your children. That's how low, how impotent, and how cowardly he really is. Then, he's going to tell you that his plan is to destroy your life—unless you pay up. Then he'll quote you some outrageous fee, which, if paid, he claims will rescue you from his wrath"; stating that "John Monarch is a liar and a con man—but for as cowardly and craven as he is, he is also a real threat to others"; and making a variety of other untrue and damaging statements and implications aimed at Plaintiffs (collectively the "False Statements"). The False Statements have been attached to **Exhibit T** hereto.

46.     Upon information and belief, in or around January of 2014, Defendants posted false, damaging, misleading and defamatory statements about Plaintiffs on the Internet, at http://ilyaputin.com/john-monarch-fact-sheet/, stating that "[h]e fronts like he is a legitimate businessman, but in reality, he is a con man, a scam artist, an extortionist, and a terrible coward who will even go after family members—husbands, wives, children—to get his way"; stating that "Monarch is the ringleader of PerformOutsider.com, which everybody knows to be a scam ring. The business façade is Direct-Outbound.com, and also Connexus Inc.; both purport to be legitimate, but of course they are not. The business is run out of South Carolina, and Monarch's second-in-command/henchman/crony is called Karl Steinborn"; and making a variety of other untrue and damaging statements and implications aimed at Plaintiffs (collectively the "False Statements").  The False Statements have been attached to **Exhibit U** hereto.

47.    Upon information and belief, in or around January of 2014, Defendants posted false, damaging, misleading and defamatory statements about Plaintiffs on the Internet, at http://ilyaputin.com/john-monarch-short-profane-disreputable/, stating that "[t]he truth is that he's something a lot sleazier than he lets on. The real problem with Monarch is that he does not have a sound business model—at all. He couldn't make money through legitimate means to save his life"; stating that "[b]ecause he can't play with the big boys—not by playing fair, anyway—Monarch has taken to using illegal and immoral methods to try to shake people down. That's right: This guy is a scammer, a blackmailer, and an extortionist, plain and simple"; stating that "[h]e tries to wreck people by posting shameful and fallacious things about them online—and not just his competitors, but also his competitors' spouses and their kids. This dirtbag holds people hostage and demands high fees in order to leave them and their families alone. Some folks pay these fees, and others don't"; and making a variety of other untrue and damaging statements and implications aimed at Plaintiffs (collectively the "False Statements").    The False Statements have been attached to **Exhibit V** hereto.

48.    Upon information and belief, in or around January of 2014, Defendants posted false, damaging, misleading and defamatory statements about Plaintiffs on the Internet, at http://ilyaputin.com/victims/, stating that "John Monarch has ruined countless lives through blackmail and extortion"; stating that John "will even post defamatory comments about his competitors' wives and children. This man is truly vile, and his immoral tactics have taken their toll on a good many people"; and making a variety of other untrue and

damaging statements and implications aimed at Plaintiffs (collectively the "False Statements"). The False Statements have been attached to **Exhibit W** hereto.

49. Upon information and belief, in or around January of 2014, Defendants posted false, damaging, misleading and defamatory statements about Plaintiffs on the Internet, at http://www.slideshare.net/JohnMonarchsColdMeal/john-monarch-direct-outbound?from_search=1 ("SlideShare"), stating that "John Monarch of Direct Outbound is scamming thousands of US consumers every month"; stating that "[h]e is scamming people left and right online. He takes the stolen money and throws lavish parties"; and making a variety of other untrue and damaging statements and implications aimed at Plaintiffs (collectively the "False Statements"). The False Statements have been attached to **Exhibit X** hereto.

50. Upon information and belief, in or around January of 2014, Defendants posted false, damaging, misleading and defamatory statements about Plaintiffs on the Internet, at http://pastebin.com/v4vLYHKr, repeating many of the foregoing defamatory statements and making a variety of other untrue and damaging statements and implications aimed at Plaintiffs (collectively the "False Statements"). The False Statements have been attached to **Exhibit Y** hereto.

51. Defendants posted the False Statements with the intent to injure Plaintiffs and/or with conscious disregard of the rights of Plaintiffs.

52. Defendant GORMAN was convicted of a sex crime and was required to register as a sex offender.

53.   Information regarding Defendant GORMAN's status as a sex offender was published on the Internet, at http://www.performoutsider.com/2013/07/29/richard-gorman-aka-directresponse-net-criminal-past/ (the "Sex Offender Content").

54.   Defendant GORMAN incorrectly believed that Monarch posted the Sex Offender Content and/or that Monarch was involved with the publication of the Sex Offender Content.

55.   Upon information and belief, in retaliation for the publication of the Sex Offender Content and to unfairly compete with Plaintiffs, Defendant GORMAN and the other Defendants started a malicious smear campaign against Plaintiffs to destroy Plaintiffs' reputation.

56.   Upon information and belief, Defendant GORMAN and the other Defendants threatened to post false and defamatory statements about Monarch if Monarch did not take down the website www.performoutsider.com, as well as the Sex Offender Content. *See* **Exhibit Z** hereto.

57.   Upon information and belief, Defendant GORMAN and the other Defendants have made, and continue to make, numerous false and defamatory postings on the Internet wrongfully accusing Monarch of being the "ringleader" of the website performoutsider.com and using the website to blackmail, harass, and intimidate people.

58.   Upon information and belief, Defendant GORMAN and the other Defendants have also pretended to be disgruntled customers of Plaintiffs and have posted false and defamatory statements concerning Plaintiffs' goods, services, and/or business methods.

59.   The defamatory postings made by Defendant GORMAN and the other Defendants clearly demonstrate the Defendants' malicious purpose and intent to destroy Plaintiffs' reputation given the type, amount, nature, and scope of the postings. The postings clearly were not made to further any lawful purpose.

60.   On January 24th, 2014, Defendant GORMAN filed a lawsuit in Pennsylvania (the "PA Lawsuit") alleging that Monarch owned the website PerformOutsider.com.

61.   On June 2nd, 2014, after having conducted extensive discovery by Order of the Court, and failing to discover any evidence, GORMAN voluntarily dismissed Monarch from the PA Lawsuit.

62.   The False Statements were posted at or around the same time GORMAN falsely accused Monarch of being the owner of PerformOutsider.com in the PA Lawsuit.

63.   Upon information and belief, at all times relevant to the allegations set forth herein, over the course of several months Defendants, with substantial assistance and the use of company resources, made the False Statements and disseminated them to current and prospective clients of DOS.

64.   Upon information and belief, at all times relevant to the allegations set forth herein, the company resources utilized included shared hosting accounts, shared domain registrar accounts, shared employees, and office addresses.

65.   The comingling of the company resources has created a unity of interest and ownership between and among the Defendant Companies such that the separate personalities of the Defendant Companies no longer exist.

66.   Defendant GORMAN waged a campaign of defamation against Plaintiffs with the intent of destroying their business and diverting business away to the Defendants' competing businesses.

67.   Most of the websites containing the False Statements were curiously removed around the time Monarch was dismissed from the PA Lawsuit.

68.   Upon information and belief, Defendants created, owned, operated, maintained, or controlled the websites containing the False Statements.

69.   Upon information and belief, Defendants made the False Statements and/or knowingly agreed to engage in a malicious smear campaign against Plaintiffs.

70.   Upon information and belief, Defendants have knowingly agreed to engage in a malicious smear campaign against Plaintiffs, as well as encourage and solicit third parties to join in their efforts, to defame and disparage Plaintiffs, interfere with Plaintiffs' existing and prospective business relationships, unfairly compete against Plaintiffs, and place Plaintiffs in false light.

71.   The following statements demonstrate Defendants' malicious intent and purpose, as well as the degree to which Plaintiffs have been specifically targeted by Defendants:

      a.   "We're looking forward to opening discovery on all of your active clients, offers, and inner-workings down there at Direct-Outbound.com in South Carolina, as we are well aware of a lot of class action attorneys that are starving are too…we know a few really good one's." *See* <u>Exhibit G</u> hereto.

      b.   "Recently John Monarch has received quite a bit of negative press online, after all he was exposed as the ring leader behind PerformOutsider.com /

Ilya Putin / Ilya Blt." "We helped to spread the word online." *See* Exhibit H hereto.

   c. "You have an army of enemies coming after you now John, and we're going to expose you for everything you've done to hurt people online. You're gonna get black balled from the affiliate marketing industry and are super toxic right now." *See* Exhibit S hereto.

72.  The False Statements made by Defendants tend to injure the Plaintiffs in their business and accuse Plaintiffs of business misconduct and/or attack the business reputation of each Plaintiff.

73.  Defendants, as joint tortfeasors, acted in concert, conspired with each other, and encouraged and assisted each other, to defame Plaintiffs; and as a result, Plaintiffs have suffered and will continue to suffer indivisible harms.

74.  Defendants have knowingly agreed to engage in a malicious smear campaign against Plaintiffs, as well as encourage and solicit third parties to join in their efforts, to defame and disparage Plaintiffs, interfere with Plaintiffs' existing and prospective business relationships, unfairly compete against Plaintiffs, and invade Plaintiffs' privacy.

75.  The False Statements have the tendency to deceive a substantial segment of those who viewed them, as the Defendants did not disclose that they were competitors of DOS and that the statements were false.

76.  As a direct and proximate cause of the Defendants having made the False Statements, Plaintiffs have been/or are likely to be injured, either by direct diversion of

sales from DOS to ACF and ACN and/or by lessening of the goodwill associated with DOS's services and/or products.

77. Plaintiffs are informed and believe, and on that basis allege, that the conduct of all of the Defendants was intentional, and done willfully and maliciously towards Plaintiffs, and with a conscious disregard for their rights which justifies an award of exemplary and punitive damages.

78. Upon information and belief, at all times relevant to the allegations set forth herein, Defendant GORMAN owned and/or had an interest in the Defendant Companies subject to this action, as well as several others.

79. Upon information and belief, Defendant GORMAN and the other Defendants engaged in a scheme and artifice by transferring assets to and among the Defendant Companies and/or to new entities in an effort to hide, conceal, and insulate assets from Plaintiffs.

80. Upon information and belief, Defendant GORMAN conspired with the other Defendants to transfer assets and ownership interests in the Defendant Companies for no value, and/or less than fair market value, with the intent to defraud Plaintiffs.

81. Upon information and belief, the Defendant Companies all use the same staff, management, employees, web hosting accounts, servers, and share the same type of business/transactions.

82. Upon information and belief, there exists a unity of interest and ownership between and among the Defendant Companies such that the separate personalities of the Defendant Companies do not exist.

83. Upon information and belief, Defendants transferred assets and ownership interests in the Defendant Companies without receiving reasonably equivalent value in exchange for the transfer.

84. Upon information and belief, Defendant GORMAN still controls or is involved with the Defendant Companies.

85. Upon information and belief, Defendants have completely disregarded the corporate formalities relating to the Defendant Companies.

86. Defendants have created confusion of the separate entities.

87. To the extent that Defendant GORMAN or the Defendant Companies sold or merged with or into other entities, such entities assumed any outstanding debts and liabilities.

## COUNT I – DEFAMATION AND DEFAMATION PER SE

88. All of the allegations contained within the paragraphs above and below are hereby incorporated by reference as if fully set out herein.

89. The False Statements made by Defendants are about and concerning Plaintiffs.

90. Without privilege, Defendants communicated the False Statements to third parties via the Internet and/or intentionally made such statements on the Internet, which were accessible to third parties without password protection.

91. Defendants' False Statements are and would be highly offensive to a reasonable person and have been published to third parties with the apparent intent of causing harm to the reputation and economic interests of Plaintiffs.

92. In making and publishing the False Statements, Defendants had knowledge of or acted in reckless disregard as to the falsity of the False Statements.

93. Plaintiffs allege, on information and belief, that Defendants published the False Statements knowing that they would be widely disseminated across the country.

94. As a direct and proximate result of Defendants posting the False Statements, Plaintiffs have sustained, and will continue to sustain, immediate and irreparable harm and injury including, but not limited to, damage to reputation, losses in revenues, loss of profits, loss of goodwill, loss of business relations with existing and future business prospects, and loss of competitive business advantage, opportunity, and/or expectancy.

95. As a direct and proximate cause of the conduct by Defendants, Monarch has and will continue to suffer humiliation, extreme emotional distress, anxiety, depression, stomach aches, headaches, lack of sleep, lack of a desire to eat, emotional pain and suffering, anguish, and loss of self-esteem.

96. The False Statements made by Defendants impeach the honesty, integrity or reputation of Plaintiffs.

97. The False Statements made by Defendants constitute defamation per se and general damages are presumed as a matter of law.

98. Plaintiffs have suffered general and special damages in an amount to be proved at trial.

99. In making and publishing the False Statements, Defendants acted maliciously, willfully, wantonly, and unlawfully.

100. For such willful and malicious acts, Plaintiffs hereby seek punitive damages in addition to their actual damages.

101. Defendants' acts, omissions, conduct and transactions alleged herein were aggravated, outrageous, and guided by evil motives wherein Defendants intended to harm Plaintiffs and/or consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiffs.

102. To dissuade Defendants from pursuing a similar course of conduct in the future and to discourage other persons from similar conduct in the future, an award of punitive damages should be awarded against Defendants in the sum of sufficient magnitude to punish Defendants and to deter similar conduct by others.

## COUNT II – APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTION

103. All of the allegations contained within the paragraphs above and below are hereby incorporated by reference as if fully set out herein.

104. As a direct and proximate result of the Defendants posting the False Statements, Plaintiffs have sustained, and will continue to sustain, immediate and irreparable harm and injury including, but not limited to, damage to reputation, losses in revenues, loss of profits, loss of goodwill, loss of business relations with existing and future business prospects, and loss of competitive business advantage, opportunity, and/or expectancy.

105. The False Statements made by Defendants impeach the honesty, integrity or reputation of Plaintiffs, Plaintiffs' businesses, and Plaintiffs' services.

106. The False Statements made by Defendants are defamatory on their face.

107.   There is a substantial risk that unless Defendants' wrongful acts described herein are temporarily, preliminarily, and/or permanently enjoined, Defendants will continue to irreparably injure Plaintiffs.

108.   Plaintiffs have no adequate remedy at law; therefore, Plaintiffs are entitled to injunctive relief.

## COUNT III – FALSE LIGHT INVASION OF PRIVACY

109.   All of the allegations contained within the paragraphs above and below are hereby incorporated by reference as if fully set out herein.

110.   In making and publishing the False Statements, Defendants caused Monarch to be portrayed out of context and in false light.

111.   The False Statements are about and concerning Plaintiffs.

112.   Defendants communicated the False Statements to third parties via the Internet and/or intentionally made such statements on the Internet accessible to third parties without password protection.

113.   Defendants' False Statements are and would be highly offensive to a reasonable person and have been published to third parties with the apparent intent of causing harm to the reputation and economic interests of Monarch.

114.   In making and publishing the False Statements, Defendants had knowledge of or acted in reckless disregard as to the falsity of the False Statements and the false light in which Monarch would be placed.

115.   The False Statements pose a direct and immediate threat to Monarch's personal and business relationships.

116.  In making and publishing the False Statements, Defendants acted maliciously, willfully, wantonly, and unlawfully.

117.  For such willful and malicious acts, Monarch hereby seeks punitive damages in addition to actual damages.

118.  Defendants' acts, omissions, conduct and transactions alleged herein were aggravated, outrageous, and guided by evil motives wherein Defendants intended to harm Plaintiffs and/or consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiffs.

119.  To dissuade Defendants from pursuing a similar course of conduct in the future and to discourage other persons from similar conduct in the future, an award of punitive damages should be awarded against Defendants in the sum of sufficient magnitude to punish Defendants and to deter similar conduct by others.

## COUNT IV – TORTIOUS INTERFERENCE WITH CURRENT AND PROSPECTIVE BUSINESS RELATIONSHIPS

120.  All of the allegations contained within the paragraphs above and below are hereby incorporated by reference as if fully set out herein.

121.  Plaintiffs have existing business relationships with clients and other persons relating to their business.

122.  Plaintiffs have a reasonable expectation of future business relationships with existing colleagues, prospective clients and employees, and others with whom Plaintiffs do business or with whom Plaintiffs may reasonably expect to do business. This expectancy is based, in part, on the considerable time, energy, and resources it takes to develop the goodwill and reputation associated with Plaintiffs' respective names.

26

123. At all material times hereto, Defendants were aware of Plaintiffs' existing and/or prospective business relationships.

124. As described herein, Defendants intentionally and/or purposefully interfered with Plaintiffs' existing and prospective relationships by unlawfully making the False Statements.

125. Defendants communicated the False Statements to third parties via the Internet and/or intentionally made such statements on the Internet accessible to third parties without password protection.

126. As a direct and proximate result of the Defendants posting the False Statements, Plaintiffs have sustained, and will continue to sustain, immediate and irreparable harm and injury including, but not limited to, damage to reputation, losses in revenues, loss of profits, loss of goodwill, loss of business relations with existing and future business prospects, and loss of competitive business advantage, opportunity, and/or expectancy.

127. In making and publishing the False Statements, Defendants acted maliciously, willfully, wantonly, and unlawfully.

128. For such willful and malicious acts, Monarch hereby seeks punitive damages in addition to actual damages.

129. Defendants' acts, omissions, conduct and transactions alleged herein were aggravated, outrageous, and guided by evil motives wherein Defendants intended to harm Plaintiffs and/or consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiffs.

130.  To dissuade Defendants from pursuing a similar course of conduct in the future and to discourage other persons from similar conduct in the future, an award of punitive damages should be awarded against Defendants in the sum of sufficient magnitude to punish Defendants and to deter similar conduct by others.

## COUNT V – AIDING AND ABETTING

131.  All of the allegations contained within the paragraphs above and below are hereby incorporated by reference as if fully set out herein.

132.  Defendants posted the False Statements with the substantial assistance and encouragement of each other.

133.  Defendants have knowingly enabled each other to defame and harass Plaintiffs, interfere with Plaintiffs' existing and prospective business relationships, cause Plaintiffs severe emotional distress, and place Plaintiffs in false light.

134.  As a direct and proximate result of the Defendants' conduct, Plaintiffs have sustained, and will continue to sustain, immediate and irreparable harm and injury including, but not limited to, damage to reputation, losses in revenues, loss of profits, loss of goodwill, loss of business relations with existing and future business prospects, and loss of competitive business advantage, opportunity, and/or expectancy.

135.  As a direct and proximate cause of the conduct by Defendants, Plaintiffs have and will continue to suffer humiliation, extreme emotional distress, anxiety, depression, stomach aches, headaches, lack of sleep, lack of a desire to eat, emotional pain and suffering, anguish, and loss of self-esteem.

136.  Defendants' conduct was intentional, malicious and done for the purpose of causing injury to Plaintiffs.

137.  For such willful and malicious acts, Plaintiffs hereby seek punitive damages in addition to actual damages.

138.  Defendants' acts, omissions, conduct and transactions alleged herein were aggravated, outrageous, and guided by evil motives wherein Defendants intended to harm Plaintiffs and/or consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiffs.

139.  To dissuade Defendants from pursuing a similar course of conduct in the future and to discourage other persons from similar conduct in the future, an award of punitive damages should be awarded against Defendants in the sum of sufficient magnitude to punish Defendants and to deter similar conduct by others.

## COUNT VI – CONSPIRACY

140.  All of the allegations contained within the paragraphs above and below are hereby incorporated by reference as if fully set out herein.

141.  Defendants conspired and acted in concert with each other, with a common purpose to engage in a malicious smear campaign against Plaintiffs, as well as encourage and solicit third parties to join in their efforts, to defame and harass Plaintiffs, interfere with Plaintiffs' existing and prospective business relationships, cause Plaintiffs severe emotional distress, and place Plaintiffs in false light.

142. Defendants committed acts in furtherance of this common purpose, including, but not limited to, Defendants' coordination with each other, as well as third parties, to more widely disseminate the False Statements using the Internet.

143. The acts committed in furtherance of Defendants' common purpose has caused special damages to Plaintiffs' business interests and reputation, including, but not limited to, the special harm caused by the augmented dissemination of the False Statements accomplished by the virtue of the conspiracy.

144. As a direct and proximate result of the Defendants' conduct, Plaintiffs have sustained, and will continue to sustain, immediate and irreparable harm and injury including, but not limited to, damage to reputation, losses in revenues, loss of profits, loss of goodwill, loss of business relations with existing and future business prospects, and loss of competitive business advantage, opportunity, and/or expectancy.

145. As a direct and proximate cause of the conduct by Defendants, Monarch has and will continue to suffer humiliation, extreme emotional distress, anxiety, depression, stomach aches, headaches, lack of sleep, lack of a desire to eat, emotional pain and suffering, anguish, and loss of self-esteem.

146. Defendants' conduct was intentional, malicious and done for the purpose of causing injury to Plaintiffs.

147. For such willful and malicious acts, Plaintiffs hereby seek punitive damages in addition to actual damages.

148. Defendants' acts, omissions, conduct and transactions alleged herein were aggravated, outrageous, and guided by evil motives wherein Defendants intended to harm

Plaintiffs and/or consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiffs.

149. To dissuade Defendants from pursuing a similar course of conduct in the future and to discourage other persons from similar conduct in the future, an award of punitive damages should be awarded against Defendants in the sum of sufficient magnitude to punish Defendants and to deter similar conduct by others.

## COUNT VII – FRAUDULENT TRANSFER

150. All of the allegations contained within the paragraphs above and below are hereby incorporated by reference as if though fully set forth herein.

151. Defendant GORMAN owned and/or controlled the Companies as manager and/or member.

152. Defendant GORMAN is a "debtor" and each Plaintiff is a "creditor" as to the debt, which is defined in 12 Pa.C.S.A. § 5101.

153. Upon information and belief, Defendant GORMAN and the other Defendants concocted a scheme and artifice to conceal, insulate and hide assets from Plaintiffs.

154. Upon information and belief, Defendants scheme and artifice included transferring assets among the Defendants to conceal, insulate and hide assets from Plaintiffs.

155. Upon information and belief, Defendants disposed of assets and interests in the Defendant Companies by transferring them to and/or among the Defendant Companies or new entities.

156. Before transferring the assets and interests in the Defendant Companies, Defendants knew that there was, or would be, an outstanding debt owed to Plaintiffs.

157. Upon information and belief, Defendants transferred the assets without receiving any reasonably equivalent value in exchange for the assets.

158. Upon information and belief, Defendants are or may be insolvent as a result of the transfer of assets.

159. Upon information and belief, Defendants transferred the assets and the interests in the Defendant Companies with the actual intent to hinder, delay, or defraud Plaintiffs.

160. Upon information and belief, Defendants have retained possession and/or control of the property transferred after the transfer.

161. Upon information and belief, all or substantially all of the applicable assets and/or interests in the Defendant Companies were transferred, respectively.

162. Upon information and belief, Defendants were aware of the fraudulent nature of the transfers and none of the Defendants took interest in the assets in good faith. Defendants and the owners of the Defendant Companies have aided and abetted in the wrongful conduct alleged herein.

163. Based on the conduct described herein, Defendants are liable for fraudulent transfers under 12 Pa.C.S.A. §§ 5104 and 5105.

164. Based on the fraudulent conduct described herein, as a direct and proximate result of Defendants' conduct, Plaintiffs have been damaged in an amount to be proven at trial.

165.  Based on the fraudulent conduct described herein, Defendants acted maliciously, willfully, wantonly, and unlawfully.

166.  For such willful and malicious acts, Plaintiffs hereby seek punitive damages in addition to actual damages.

167.  Defendants' acts, omissions, conduct and transactions alleged herein were aggravated, outrageous, and guided by evil motives wherein Defendants intended to harm Plaintiffs and/or consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiffs.

168.  To dissuade Defendants from pursuing a similar course of conduct in the future and to discourage other persons from similar conduct in the future, an award of punitive damages should be awarded against Defendants in the sum of sufficient magnitude to punish Defendants and to deter similar conduct by others.

## COUNT VIII – ALTER EGO

169.  All of the allegations contained within the paragraphs above and below are hereby incorporated by reference as if though fully set forth herein.

170.  Based on the facts alleged herein, there is such a unity of interest and ownership between and among the Defendant Companies such that the separate personalities of the Companies do not exist.

171.  The Defendant Companies and/or the new entities are alter egos of each other.

172.  Under the circumstances alleged herein, observing the corporate form would promote injustice or sanction a fraud.

173.  Due to the lack of corporate formalities, Plaintiffs are entitled to damages and Defendants are each liable for the damages caused as each acts as an alter ego.

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

1.  For a preliminary and permanent injunction compelling Defendants to remove from the Internet all material pertaining to Plaintiffs and their businesses;

2.  For a preliminary and permanent injunction enjoining Defendants from publishing any false statements or defamatory material to any third party;

3.  For general damages in an amount to be proven at trial;

4.  For special damages in an amount to be proven at trial;

5.  For punitive damages in an amount to be proven at trial;

6.  For Plaintiffs' costs herein incurred;

7.  For Plaintiffs' reasonable attorneys' fees incurred herein;

8.  For interest on the foregoing attorneys' fees and court costs at the statutory rate from the date of judgment until paid;

9.  For prejudgment and postjudgment interest on all damages at the highest rate allowed by law from the date of injury until paid in full; and

10.  For such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 21st day of October, 2014

Matthew Glazer, Esq.
**COZEN O'CONNOR**
1900 Market St
Philadelphia, PA 19103
(215) 665-2000
MGlazer@cozen.com
*Attorneys for Plaintiffs*

/s/ Daniel R. Warner
Daniel R. Warner, Esq.
Arizona Bar # 026503
(Pro Hac Vice application forthcoming)
**KELLY / WARNER, PLLC**
8283 N. Hayden Road, Suite 229
Scottsdale, Arizona 85258
Tel: 480-331-9397
Fax: 1-866-961-4984
Email: dan@kellywarnerlaw.com
*Attorneys for Plaintiffs*

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs, by and through undersigned counsel, hereby demand a trial by jury for all questions of fact that can be decided by a jury in the above-entitled action.

RESPECTFULLY SUBMITTED this 21st day of October, 2014

_____
Matthew Glazer, Esq.
**COZEN O'CONNOR**
1900 Market St
Philadelphia, PA 19103
(215) 665-2000
MGlazer@cozen.com
*Attorneys for Plaintiffs*

/s/ Daniel R. Warner
Daniel R. Warner, Esq.
Arizona Bar # 026503
(Pro Hac Vice application forthcoming)
**KELLY/WARNER, PLLC**
8283 N. Hayden Road, Suite 229
Scottsdale, Arizona 85258
Tel: 480-331-9397
Fax: 1-866-961-4984
Email: dan@kellywarnerlaw.com
*Attorneys for Plaintiffs*

# VERIFICATION OF COMPLAINT

I, JOHN MONARCH, declare as follows:

1. I am a duly-authorized representative of Plaintiff DIRECT OUTBOUND SERVICES LLC named in the matter entitled MONARCH, et al. v GORMAN, et al., and I am authorized to make this declaration/verification;

2. I am also a Plaintiff in this lawsuit;

3. I have read and know the contents of the Complaint, and the matters and things therein stated are true and correct to the best of my knowledge and belief; and

4. All of the foregoing matters and factual matters set forth in the Complaint are within my personal knowledge, and all documents attached to the Complaint are true and correct copies of what the documents purport to be.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:     10/20/14

JOHN MONARCH

1