IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN C. MONARCH, et al., | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | No. 14-5980 |
| v. | : | |
| | : | |
| RICHARD A. GORMAN, et al., | : | |
| Defendants. | : | |

**MEMORANDUM ORDER**

This 22nd day of September, 2015, upon review of Defendants' Motions to Dismiss or Partially Dismiss, docketed as document numbers 34, 35, 36, 39, and 40, and Plaintiffs' Responses thereto, it is hereby **ORDERED** as follows:

1) Plaintiffs' claim for "False Light" Invasion of Privacy in Count II of the First Amended Complaint is **DISMISSED**, without leave to amend. South Carolina law governs the issue and does not recognize a claim for false light invasion of privacy.[1] Accordingly,

---

[1] The parties disagree about which state's law applies to this claim. Pennsylvania uses a two-step hybrid approach to conflict of laws problems. In the first step, a court must determine whether a "real conflict" exists, such that the application of each state's respective substantive law produces a contrary result. *Hammersmith v. TIG Ins. Co.,* 480 F.3d 220, 230 (3d Cir. 2007). Pennsylvania recognizes four different invasion of privacy claims, including "publicity placing a person in a false light." *Marks v. Bell Tel. Co. of Pa.*, 331 A.2d 424, 430 (1975). On the other hand, no South Carolina court has ever recognized a claim for false light invasion of privacy. *Brown v. Pearson*, 483 S.E.2d 477, 484 (1997). This creates a real conflict since the application of South Carolina law would require dismissal of this claim, while Pennsylvania law would allow the cause of action. In the second step, if each state has a cognizable interest in applying its own law, then this conflict is a "true conflict," and the court must determine "which state has the greater interest in the application of its law." *Hammersmith,* 480 F.3d at 231. Pennsylvania maintains an interest in safeguarding a person's reputation from unjust harm caused by materials published within the state, while South Carolina has an interest in affording a degree of protection for those who publish materials in the state that may potentially be "false light" communications. The Restatement (Second) of Conflicts provides that, in the case of an invasion of privacy arising from a matter published in the aggregate, the state with the greatest interest in the application of its law "will usually be the state where the plaintiff was domiciled at the time if the matter complained of was published in that state." Restatement (Second) of Conflict of Laws § 153 (1971). The statements at issue were published online and accessible in every state. The parties could justifiably expect that South Carolina law would be applied when Plaintiff Monarch was domiciled there at the time his privacy was allegedly invaded. I therefore find that South Carolina has the most significant relationship to the claim, and thus that state's law will be applied.

1

Plaintiffs are precluded from arguing false light claims as a separate cause of action. However, as damages rooted in the loss of privacy may still be relevant to a tort of defamation, *Erickson v. Jones St. Publishers, L.L.C.*, 629 S.E.2d 653, 673 (2006), Plaintiffs' allegations under this count are deemed incorporated into Count I alleging Defamation, which has not been challenged by any of the Defendants. My analysis of the governing law does not change in light of the additional facts alleged in Plaintiff Monarch's supplemental affidavit. Pl.'s Resp. Def. Brand's Mot. to Dismiss, Ex. A, at ¶ 5(a–b). I am therefore convinced that amendment of the First Amended Complaint would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (naming "futility of amendment" as a proper reason for denying leave to amend).

2) Plaintiffs' claim for "Wrongful Appropriation of Personality" in Count III of the First Amended Complaint is **DISMISSED**. There are no relevant differences between the Pennsylvania and South Carolina laws for this cause of action.[2] When application of the law of either state would produce the same result, then "there is no *conflict* at all, and a choice of law analysis is unnecessary." *Hammersmith*, 480 F.3d at 230 (3d Cir. 2007); *see also On Air Entm't Corp. v. Nat'l Indem. Co.*, 210 F.3d 146, 149 (3d Cir. 2000). The law of the forum state therefore applies. The essence of this tort requires that a Defendant act with the purpose of taking advantage of the positive value and good will associated with another's reputation. *See AFL Philadelphia LLC v. Krause*, 639 F. Supp.

---

[2] The Pennsylvania Supreme Court has recognized a cause of action for invasion of privacy by "appropriation of name or likeness." See *Vogel v. W.T. Grant Co.*, 327 A.2d 133 (1974). Although the law concerning this cause of action is somewhat unsettled in Pennsylvania, federal district courts generally agree that the analysis of the Restatement (Second) of Torts applies. *See Fanelle v. LoJack Corp.*, 79 F. Supp. 2d 558, 564 (E.D. Pa. 2000); *AFL Philadelphia LLC v. Krause*, 639 F. Supp. 2d 512, 530 (E.D. Pa. 2009). The Restatement provides liability for appropriation if the defendant "appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness." Restatement (Second) of Torts § 652C (1977). South Carolina recognizes an invasion of privacy tort for "wrongful appropriation of personality," which "involves the intentional, unconsented use of the plaintiff's name, likeness, or identity by the defendant for his own benefit." *Snakenburg v. Hartford Cas. Ins. Co. Inc.*, 299 S.C. 164, 170 (1989).

2

2d 512, 531 (E.D. Pa. 2009).  Plaintiffs make allegations contrary to the essential elements of the tort, including that Defendants acted "with the apparent intent of causing harm to the reputation…of Plaintiffs. "  Pl.'s First Am. Compl. at ¶ 154.  Plaintiffs have therefore failed to state a plausible claim to relief under this cause of action.

3) Plaintiffs' claim for "Wrongful Publicizing of Private Affairs" in Count IV of the First Amended Complaint is **DISMISSED**, without leave to amend.  There are again no relevant differences between the Pennsylvania and South Carolina laws for this cause of action.[3]  Since the application of each state's substantive law produces the same result, the court may apply the law of the forum state.  *Hammersmith.*, 480 F.3d at 230.  In order to state a claim for this tort, the law requires that the facts publicized be private, rather than facts "which the plaintiff himself leaves open to the public eye."  *Harris by Harris v. Easton Pub. Co.*, 483 A.2d 1377, 1384 (1984).  In addition, there is no liability for publication of facts that are of public concern, such as facts in official court records or facts regarding events like weddings, even if intended to be private affairs.  *Id.* at 1384–85.  As Defendant Brand.com notes, if the published facts in question were true, they would be of legitimate public concern.  Mem. Supp. Def. Brand.com's Mot. to Dismiss at 9.  Plaintiffs have therefore failed to state a plausible claim to relief under this cause of action.  My analysis does not change in light of the additional allegations in Plaintiff Monarch's supplemental affidavit, Pl.'s Resp. Def. Brand's Mot. to Dismiss, Ex. A, at ¶ 5(d), which include only facts available in public documents and left "open to the public

---

[3] Pennsylvania's tort for "public disclosure of private facts" is substantively similar to South Carolina's tort for "wrongful publication of private affairs."  Both states require the following elements: (1) wrongful publication of facts that are (2) private, (3) humiliating or offensive to an ordinary person, and (4) not of legitimate concern to the public.  *See  Harris by Harris v. Easton Pub. Co.*, 483 A.2d 1377, 1384 (1984); *Swinton Creek Nursery v. Edisto Farm Credit, ACA*, 514 S.E.2d 126, 131 (1999).

3

eye." I am therefore convinced that amendment of the First Amended Complaint would be futile.

4) Plaintiffs' claim for "Aiding and Abetting" in Count VI of the First Amended Complaint is **DISMISSED**. It is unclear whether Pennsylvania or South Carolina would recognize "aiding and abetting" as a separate cause of action in the context of Plaintiffs' claims.[4] However, the allegations of concerted action that Plaintiffs make in support of this claim, Pl.'s First Am. Compl. at ¶ 178, are repeated again in support of Plaintiffs' claim for Conspiracy in Count VII of the First Amended Complaint, Pl.'s First Am. Compl. at ¶ 204. I find that these allegations are more appropriately covered by the claim of conspiracy, which no defendant has moved to dismiss. Accordingly, I dismiss aiding and abetting as a separate cause of action, but Plaintiffs' allegations under this count are deemed incorporated into Count VII alleging Conspiracy.

5) Defendant Gorman's Motion to dismiss Plaintiff's Claim for "Fraudulent Transfer" in Count VIII of the First Amended Complaint is **DENIED**. Defendant Gorman argues that since the alleged transfers occurred approximately ten months before Plaintiffs filed suit, Defendant could not have perceived Plaintiffs as potential creditors. Def. Gorman's Partial Mot. to Dismiss at ¶¶ 43-45. However, a transfer may be deemed fraudulent even if the creditor's claim arose after the transfer was made. 12 P. S. § 5104(a).[5] Whether the

---

[4] Pennsylvania recognizes a claim for "concerted tortious conduct," which is analogous to civil aiding and abetting. *HRANEC Sheet Metal, Inc. v. Metalico Pittsburgh, Inc.*, 107 A.3d 114, 120 (2014) ("[A] concerted tortious conduct claim is a viable cause of action in Pennsylvania…Section 876 of the Restatement (Second) of Torts addresses the tort of civil aiding and abetting, which is also known as concerted tortious conduct."). South Carolina has also cited Section 876 of the Restatement (Second) of Torts with approval. *Future Grp., II v. Nationsbank*, 478 S.E.2d 45, 50 (1996). However, such claims appear to typically be recognized in the context of claims for negligence or breach of fiduciary duty, not for the claims that Plaintiffs cite as the torts in which Defendants aided and abetted (defamation, tortious interference with current and prospective business relationships, infliction of emotional distress, or false light claims). Pl.'s First Am. Compl. at ¶ 195.

[5] The Committee Comment to 12 P. S. § 5104 affirmatively cites *Pergrem v. Smith*, 255 S.W.2d 42 (Ky. App. 1953), in which a tortfeasor's transfer of property within one week of committing the tort was deemed "in anticipation of

4

debtor had been "sued or threatened with suit" at the time of the transfer is one factor among many to be considered. 12 P. S. § 5104(b)(4). As I must accept Plaintiffs' allegations as true in assessing a motion to dismiss, *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009), I find that Plaintiffs have pled sufficient facts to state a plausible claim for fraudulent transfer.

6) Plaintiffs' claim for "Alter Ego" in Count IX of the First Amended Complaint is **DISMISSED**. The *alter ego* doctrine represents a substantive principle of law separate from a cause of action. Whether the doctrine applies in this case will be a function of the evidence. This claim is therefore dismissed as a count in the complaint, without prejudice to Plaintiffs' ability to raise such a substantive legal argument when appropriate.

7) Plaintiffs' claim for Preliminary and Permanent Injunction in Count X of the First Amended Complaint is **DISMISSED**. Injunctive relief is a remedy, not a separate cause of action. Plaintiffs suggest that they intend to file a Motion for Injunctive Relief pursuant to Fed. R. Civ. P. 65. Pl.'s First Am. Compl. at ¶ 269. This count of the complaint is dismissed without prejudice to Plaintiffs' right to take such affirmative steps to pursue the entry of an injunction when appropriate.

          /s/ Gerald Austin McHugh
          United States District Court Judge

---

litigation" and fraudulent, even though he was not sued until about five months after commission of the tort. Plaintiffs similarly argue that Defendants made transfers immediately after committing tortious conduct because they knew that they could be sued for the action, even though they had not yet been sued. Pl.'s Resp. Def. Gorman's Mot. to Dismiss at 12.